# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

EVELYN PERALTA,

              Plaintiff

v.

                                C.A. No. 1:17-cv-00263-M-PAS

U.S. BANK, N.A.,

              Defendant

## DEFENDANT U.S. BANK NATIONAL ASSOCIATION'S
## MEMORANDUM OF LAW IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS

## INTRODUCTION

Plaintiff Evelyn Peralta ("Plaintiff") has pleaded herself into a corner.  On the one hand, Plaintiff maintains that Defendant U.S. Bank National Association ("U.S. Bank" or "Bank") was not her "Lender" and thus lacked authority to foreclose her delinquent mortgage. On the other, Plaintiff alleges that U.S. Bank breached a term of the mortgage binding on the "Lender" by failing to conduct a "face-to-face meeting" under 24 C.F.R. § 203.604(b).  In other words, Plaintiff asserts that U.S. Bank at once possesses none of the "Lender's" contractual rights but is burdened by all of the "Lender's" contractual duties.  This internal inconsistency alone renders Plaintiff's claims implausible.

But even if Plaintiff's conflicting allegations could be untangled, Plaintiff still fails to state a claim for relief.  Those allegations establish that U.S. Bank held legal title to the mortgage, and Rhode Island law therefore permitted U.S. Bank to foreclose in its own name. Even if that were not the case, Plaintiff lacks standing to contest the foreclosure deed because the defect she alleges does not render the deed void.

Plaintiff also fails to state a claim for breach of contract or the implied covenant of good faith and fair dealing based on U.S. Bank's alleged failure to conduct a "face-to-face

meeting" pursuant to the mortgage and 24 C.F.R. § 203.604(b).  First, Plaintiff's contract claims

fail because she has not alleged that a "face-to-face meeting" would have prevented the

foreclosure.  Absent such factual allegations, the Complaint does not plausibly allege the

essential elements of causation and damages.  Second, Plaintiff was already in material breach of

the mortgage when U.S. Bank foreclosed and cannot be heard to complain that U.S. Bank

supposedly breached the mortgage's terms afterward.  Courts have routinely dismissed identical

contract claims brought by other borrowers for either or both of these reasons.

Finally, Plaintiff's fraud claim under Rhode Island's Deceptive Trade Practices

Act (the "Act") fails because Plaintiff has not pleaded her claim with particularity as required

under Rule 9(b) of the Federal Rules of Civil Procedure.  And even if she had, Plaintiff's claim

still fails because it implicates matters within federal regulatory jurisdiction and thus is exempted

from the Act's reach by R.I. Gen. Laws § 6-13.1-4, and also because a mortgage loan is not a

purchase or lease of goods or services and for this reason the DTPA does not apply.

For these reasons, Plaintiff has failed to state a plausible claim for which relief

may be granted.  The Court should therefore dismiss her Complaint in its entirety and with

prejudice.

## STATEMENT OF FACTS

### I.      PLAINTIFF BORROWS $91,800 SECURED BY A MORTGAGE ON REAL PROPERTY.

On November 26, 1999, Plaintiff borrowed $91,800 from Domestic Bank and

executed a promissory note ("Note") payable to its order and to that of its successors and assigns

(*i.e.*, the "Lender" under the Note).  (Compl. ¶ 30.)  To secure repayment of the loan evidenced

by the Note, Plaintiff granted Domestic Bank a mortgage ("Mortgage") on real property located

at 95-97 Atlantic Avenue, Providence, Rhode Island (the "Property").  The Mortgage was

recorded on November 30, 1999, in the Land Evidence Records of the City of Providence, Rhode Island, in Book 4238 at Page 326 and is a matter of public record.[1]  True and correct copies of the Note and Mortgage are attached hereto as Exhibits A and B.[2]

On December 2, 1999, Domestic Bank executed an Assignment of Mortgage by which its interest in the Mortgage was assigned to Credit Northeast, Inc.  (Ex. D.)  This Assignment was recorded on March 16, 2000, in the Land Evidence Records of the City of Providence, Rhode Island, in Book 4315 at Page 226 and is a matter of public record.  (*Id.*)  Some time later, Credit Northeast, Inc., executed a further Assignment of Mortgage in favor of U.S. Bank's predecessor, Firstar Bank, N.A, which subsequently became U.S. Bank by merger.  (Ex. E.)  This Assignment of Mortgage was recorded on March 16, 2000, in the Land Evidence Records of the City of Providence, Rhode Island, in Book 4315 at Page 227 and is a matter of public record.  (*Id.*)

No further assignments of the Mortgage have been recorded in the Land Evidence Records of the City of Providence, Rhode Island, and Plaintiff does not allege otherwise.

The United States Federal Housing Administration ("FHA") insured repayment of Plaintiff's mortgage loan.  (Compl. ¶¶ 30-31.)  Plaintiff's Note contemplated a thirty-year amortization schedule, with monthly principal and interest payments of $641.88, due on the first of every month.  (Ex. A § 4(C).)  Plaintiff agreed that she would be in default if she failed to tender any monthly payment when due.  (*Id.* § 6(B).)  Both the Note and the Mortgage also

---

[1]  On December 28, 1999, Plaintiff executed a "Corrective Mortgage" in favor of Domestic Bank and its successors and assigns that is identical to the original Mortgage, but attaches a "Rehabilitation Loan Rider," which was inadvertently omitted from the original Mortgage.  (Ex. C ("Corrective Mortgage").)  The Corrective Mortgage was thereafter recorded on January 4, 2000, in the Land Evidence Records of the City of Providence, Rhode Island in Book 4266 at Page 307.  (*Id.*)

[2]  In considering a Rule 12(b)(6) motion to dismiss, the Court may accept as true facts established by "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

included an "acceleration clause," providing that, except as limited or prohibited by HUD regulations, U.S. Bank could require immediate payment of the full amount due on the loan in case of default. (Ex. A § 4(C) & Ex. B § 9(a).) The Mortgage provides further that, "[i]n many circumstances regulations issued by the [HUD] Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary." (Ex. B § 9(d); Compl. ¶ 37.)

In the Mortgage, Plaintiff granted the Lender a right to foreclose by power of sale if "Lender requires immediate payment in full under Paragraph 9" after a default. (Ex. B § 18.) Plaintiff further acknowledged that "[t]he covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender . . . ," which necessarily includes U.S. Bank as successor to Firstar Bank. (*Id.* § 12; Compl. ¶ 33 ("Subsequently U.S. Bank became the mortgagee of the Peralta Mortgage").)

## II.    PLAINTIFF'S MORTGAGE IS POOLED IN A GINNIE MAE SECURITIZATION.

Plaintiff alleges that U.S. Bank, acting as an "Issuer," securitized Plaintiff's loan, pooling it with other FHA-insured loans under a program maintained by Ginnie Mae. (Compl. ¶¶ 17-19 & 32.) Ginnie Mae "is a wholly-owned corporate instrumentality of the United States within the Department of Housing and Urban Development." *First Nat'l Bank of Chicago v. Jefferson Mortg. Co.*, 576 F.2d 479, 482 (3d Cir. 1978); *see* 12 U.S.C. § 1717(a)(2)(A); 24 C.F.R. § 390.1. Congress created Ginnie Mae under the National Housing Act "to guarantee timely payment of the principal of, and interest on, securities based on and backed by pools of mortgages insured by the Federal Housing Administration or guaranteed by the Veterans Administration." *First Nat'l Bank of Chicago*, 576 F.2d at 482. By backing the securities,

Ginnie Mae guarantees to investors that if the Issuer (as alleged here, U.S. Bank) cannot timely pay the proper amount of principal and interest, then Ginnie Mae will make up the shortfall. *United States v. NBD Bank, Nat'l Ass'n*, 922 F. Supp. 1235, 1240 (E.D. Mich. 1996).

In agreeing to back the securities, Ginnie Mae requires the Issuer to sign a "standard Guaranty Agreement"[3] assigning to Ginnie Mae "equitable title in the mortgages it holds." *Id.* at 1240. The "[I]ssuer, however, retains legal title so that it may service the mortgages." *Hoffman v. Phelan Hallinan, LLP*, 2016 WL 4089163, at *4 (E.D. Pa. Aug. 2, 2016). (Compl. ¶ 19 (alleging that U.S. Bank serviced "the pooled mortgages"); Ex. F, Ginnie Mae Guaranty Agreement §§ 4.03 & 4.06 (authorizing the Issuer to service and foreclose the pooled mortgages, and to "execute and deliver in its own name . . . any and all instruments . . . with respect to all the Mortgages and with respect to the properties covered by all such Mortgages").) Only "if the [I]ssuer defaults on its obligations to holders of the mortgage-backed securities," will Ginnie Mae take legal title to the mortgages. *Hoffman*, 2016 WL 4089163, at *4 (quoting *Poindexter v. Nat'l Mortgage Co.*, 1995 WL 242287, at *1 (N.D. Ill. Apr. 24, 1995)); 74 Fed. Reg. 60143, 60146 (Nov. 20, 2009) ("as the guarantor of these securities Ginnie Mae obtains equitable title in the mortgage loans but . . . the issuers of the securities retain legal title to the loans that collateralize the securities. . . . [L]egal title to the loans is not conveyed to Ginnie Mae unless the issuer of the securities defaults in its obligations").

In her Complaint, Plaintiff concludes that Ginnie Mae took "all right title and interest in the note secured by the Peralta Mortgage" when U.S. Bank became the Issuer of Ginnie Mae securities backed by the "pool of mortgages of which the Peralta Mortgage was a part." (Compl. ¶ 32.) Plaintiff, however, does not—and cannot—support her conclusion with an

---

3   Ginnie Mae's Handbook 5500.3, REV-1 includes the Guaranty Agreement as Appendix III-15, a copy of which is attached as Exhibit F to this Memorandum.

allegation that U.S. Bank has ever been in default of its obligations as an Issuer of Ginnie Mae securities.

## III.    U.S. BANK FORECLOSES, AND PLAINTIFF FILES THIS LAWSUIT.

Plaintiff eventually defaulted under the terms of the Note and Mortgage,[4] and U.S. Bank sent her a notice of Mortgagee's Foreclosure Sale.  (Compl. ¶¶ 33-34.)  The sale was conducted on December 13, 2016, and a third party purchased the Property for $141,000.  (*Id.* ¶ 35; Ex. G.)

Plaintiff thereafter filed this lawsuit against U.S. Bank.[5]  In Count I of her Complaint, Plaintiff seeks a declaratory judgment that the foreclosure sale and conveyance by foreclosure deed "are void, invalid, and without force and effect" and an injunction "requiring that the Defendant be prevented from foreclosure action against Plaintiff . . . or any eviction action until such time as proper notice is made pursuant to statute."  (Compl. ¶¶ 72, 78.)  In support of Count I, Plaintiff alleges the "subject matter note at all times relevant to the foreclosure action[] . . . was held by Ginnie Mae," and that U.S. Bank conducted the foreclosure sale "without authority and power of attorney from Ginnie Mae, in violation of R.I.Gen. Laws § 34-11-34," which requires that any "conveyance executed by attorney shall be as valid as if executed by the grantor herself, providing that a power of attorney be given by such grantor for this purpose . . . and recorded with like formalities prescribed by law concerning deeds from grantors in person."  (*Id.* ¶¶ 65-66.)  As an alternative to declaratory or injunctive relief, Plaintiff seeks "actual, exemplary, punitive, and monetary damages."  (*Id.* ¶¶ 79-80.)

---

[4]    Plaintiff acknowledges that she was delinquent in making payments under Note and Mortgage.  (*See* Compl. ¶ 91.)

[5]    Plaintiff purports to also sue on behalf of a class of "homeowners or former homeowners" whose mortgages were foreclosed by U.S. Bank.  (Compl. ¶¶ 41-62.)

In Count II, Plaintiff purports to sue for breach of the "duty of good faith and reasonable diligence." (*Id.* ¶ 89.)  Plaintiff alleges U.S. Bank breached paragraph 9(d) of the Mortgage "by proceeding and completing foreclosures when those actions were not permitted by regulations of the Secretary of the Department of Housing and Urban Development as codified in 24 CFR 203.604(b)." (*Id.* ¶ 90.)  Plaintiff alleges she was "damaged by these breaches of duty including without limitation, loss of equity, lost opportunities to work-out his [*sic*] mortgage delinquency, and by imposition of inappropriate foreclosure fees and costs," as well as "severe and extreme emotional and mental distress . . . ." (*Id.* ¶¶ 91-92.)

In Count III, Plaintiff sues for "breach of contract and breach of [the] covenant of good faith and fair dealing." (*Id.* ¶¶ 98-108.)  In this count, Plaintiff repeats her allegation that U.S. Bank breached paragraph 9(d) of the Mortgage by violating HUD regulation 24 C.F.R. § 203.604(b), which requires mortgagees to conduct "a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting" prior to foreclosing. (*Id.* ¶¶ 105-06.)

In Count IV, Plaintiff alleges that U.S. Bank violated "Rhode Island's consumer protection and unfair and deceptive acts and practices laws," codified at R.I. Gen. Laws § 6-13-1. (*Id.* ¶¶ 109-123.)  Plaintiff alleges generally that U.S. Bank intentionally defrauded Plaintiff and induced her to "enter into contract or obligations" by making "false, deceptive and misleading representations and omissions about material aspects of the goods and services" allegedly offered to her. (*Id.* ¶¶ 116-19.)  Plaintiff alleges U.S. Bank's "conduct as set forth herein is deceptive, unfair and unconscionable, in violation of R.I. Gen. Laws § 6-13.1-2." (*Id.* ¶ 120.)

## ARGUMENT

## I.   MOTION TO DISMISS STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint that pleads facts "merely consistent with a defendant's liability . . . stop[s] short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 555.

In considering a Rule 12(b)(6) motion, a court accepts all facts alleged in the complaint as true and construes them in the light most favorable to the non-moving party.  *A.G. ex rel. Maddix v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (citing *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)).  But the court need not "accept as true legal conclusions from the complaint or 'naked assertions devoid of further factual enhancement'" that merely recite "the elements of a cause of action." *Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678); *see Elsevier*, 732 F.3d at 80 ("A mechanistic recital of the elements of a claim will not suffice").  In addition to the allegations in the complaint, the court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d at 46 (1st Cir. 2011); *see also Lister v. Bank of Am., Nat'l Ass'n*, 790 F.3d 20, 23 (1st Cir. 2015) (the Court may "consider documents incorporated by reference into the complaint and matters of public record" (citing *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 7 (1st Cir. 2014) (citing *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir.2008)))).

For claims alleging fraud or mistake, the plaintiff "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Such claims require specific factual allegations "about the time, place, and content of the alleged false representations." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013) (quoting *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 279-80 (1st Cir. 2013)).

## II.   THE COURT SHOULD DISMISS COUNT I SEEKING TO INVALIDATE THE FORECLOSURE UNDER R.I. GEN. LAWS § 34-11-34.

The Court should first reject Count I of Plaintiff's Complaint seeking to invalidate the foreclosure sale because U.S. Bank "did not have specific authority or a power of attorney from note-holder 'Lender' Ginnie Mae, authorizing them to foreclosure [*sic*], sell at mortgagee's foreclosure sale, and make conveyance by foreclosure deed of the subject property, as is required pursuant to R.I. Gen. Laws § 34-11-34." (Compl. ¶ 68.)  No such power of attorney is required, and Plaintiff lacks standing to challenge the foreclosure deed.

### A.   U.S. Bank Did Not Act As Ginnie Mae's Attorney-In-Fact.

Based on Plaintiff's allegations and the public records her Complaint embraces, U.S. Bank, as assignee of the Mortgage, foreclosed in its own name and not on behalf of Ginnie Mae or any other party.  R.I. Gen. Laws § 34-11-34, which deals with conveyances executed by a party's attorney-in-fact, has no application to the facts alleged.  The statute provides:

> Any conveyance [of real property] executed by attorney shall be as valid as if executed by the grantor herself, providing that a power of attorney be given by such grantor for this purpose; which power and the deed executed by the attorney thereunder shall be signed, acknowledged, delivered and recorded with like formalities prescribed by law concerning deeds from grantors in person.

Plaintiff theorizes that U.S. Bank was required to obtain a power of attorney from Ginnie Mae "to exercise the statutory power of sale in Plaintiffs' mortgages," because Ginnie Mae was the "note-holder." (Compl. ¶¶ 69-70.)  This claim fails because, taking as true Plaintiff's allegation that Ginnie Mae held the Note, Plaintiff does not allege that U.S. Bank lacked legal title *to the Mortgage*, and title to the Mortgage is all that U.S. Bank needed to foreclose.

Rhode Island "law contemplates distinctions between the legal interest in a mortgage and the beneficial interest in the underlying debt.  These are distinct interests, and they may be held by different parties." *Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1088 (R.I.

2013) (quoting *Culhane v. Aurora Loan Servs. of Neb.*, 826 F. Supp. 2d 352, 370 (D. Mass. 2011), *aff'd*, 708 F.3d 282 (1st Cir. 2013)). For this reason, a mortgagee who holds legal title to the mortgage may foreclose and convey the property by foreclosure deed. *Id.* at 1088.

When a mortgagee lacks title to the note that the mortgage secures, the mortgagee need not obtain or record a power of attorney to foreclose. Indeed, "an agency agreement relating to a mortgage need not be in writing, much less recorded." *Akalarian v. Nation One Mortg. Co.*, 2013 R.I. Super. LEXIS 141, *12 n.8 (R.I. Super. Ct. July 29, 2013) (rejecting plaintiff's reliance on R.I. Gen. Laws § 34-11-34 to challenge foreclosure deed executed by MERS as nominee for the true beneficiary of a note and mortgage). As R.I. Gen. Laws § 34-11-34 makes clear, a power of attorney is only required if an attorney-in-fact executes a conveyance of real property on behalf of the grantor, *i.e.*, if someone *other than the grantor* executes the deed. *Id.* Here, the grantor in the foreclosure deed is U.S. Bank, who held legal title to the Mortgage and therefore conveyed legal title to the Property upon completion of the foreclosure sale. (*See* Ex. G.) U.S. Bank did not act as "attorney" for the grantor; U.S. Bank *was* the grantor. Consequently, R.I. Gen. Laws § 34-11-34 does not apply. *Akalarian,* 2013 R.I. Super. LEXIS 141, at *12 n.8 ("none of the facts in this matter demonstrate that any entity executed a conveyance on behalf of another entity as attorney in fact such that recording of a power of attorney was required pursuant to G.L. 1956 § 34-11-34").

U.S. Bank held legal title to the Mortgage, and Plaintiff does not and cannot allege otherwise. U.S. Bank had the power to—and did—execute the foreclosure deed in its own stead. R.I. Gen. Laws § 34-11-34 accordingly does not apply, and for this reason the Court should dismiss Count I of Plaintiff's Complaint.

### B.     Plaintiff Lacks Standing To Contest The Foreclosure Deed.

Even if U.S. Bank was required to record a power of attorney before conveying the Property by foreclosure deed, Plaintiff lacks standing to challenge that conveyance.  A "mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title."  *Culhane*, 708 F.3d at 291; *see also Butler v. Deutsche Bank Trust Co. Americas*, 748 F.3d 28, 37 (1st Cir. 2014) ("an assignment that is voidable, but not void, may not be challenged by a homeowner that is not a direct party to, or beneficiary of, the transfer"); *Caito v. Mortg. Elec. Registration Sys., Inc.*, No. CA 13-429-M, 2015 WL 4480348, at *1 (D.R.I. July 21, 2015) ("'claims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing'" (quoting *Butler*, 748 F. 3d at 37)).

Here, Plaintiff lacks standing to challenge the foreclosure deed because she is not a party to it, and a failure to record a power of attorney under R.I. Gen. Laws § 34-11-34 does not render the deed void.  *See Deutsche Bank Nat'l Trust Co. v. Monegro*, 2013 R.I. Super. LEXIS 20, at *14 (R.I. Super. Ct. Jan. 24, 2013) ("Finally, § 34-11-34 does not establish that a conveyance is void absent the recording of a power of attorney").  Failing to record a power of attorney does not void the deed because, even if an agent "acts beyond the scope of his authority, his acts in excess of [that] authority, although voidable by the [principal], legally could be ratified and adopted by it."  *Butler*, 748 F.3d at 37 (quoting *Comm'r of Banks v. Tremont Trust Co.*, 259 Mass. 162, 179-80 (1927)).

For this reason, Rhode Island courts routinely have dismissed challenges to foreclosure deeds based upon R.I. Gen. Laws § 34-11-34.  Under Rhode Island law, "a plaintiff/mortgagor in these circumstances lacks standing to challenge the validity of the

mortgage assignment." *Van Hoecke v. First Franklin Fin. Corp.*, 2013 R.I. Super. LEXIS 43, at

*8 (R.I. Super. Ct. Mar. 7, 2013) (holding that plaintiff lacked standing to sue under R.I. Gen.

Laws § 34-11-34 and claim the individual "executing the . . . foreclosure deed did not have

authority to do so"); *see also Monegro*, 2013 R.I. Super. LEXIS 20, at *13 (finding

plaintiff/mortgagor lacked standing to claim the "foreclosure deed [is] void as there is no

recorded power of attorney authorizing the individuals who signed the assignments and the

foreclosure deed to execute those documents").  The facts are no different here:  Plaintiff is not a

party to the foreclosure deed, and U.S. Bank's alleged failure to record a power of attorney does

not render the deed void.  Like the mortgagors in *Van Hoecke* and *Monegro*, Plaintiff lacks

standing to contest the foreclosure deed.  Count I should accordingly be dismissed.

## III.    PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT SHOULD BE DISMISSED.

In Count III, Plaintiff alleges U.S. Bank breached the express terms of the

Mortgage and the implied covenant of good faith and fair dealing by foreclosing "when those

actions were not permitted by regulations of the Secretary of the Department of Housing and

Urban Development as codified in 24 C.F.R. 203.604(b)."  (Compl. ¶¶ 89-90, 105-07.)  Plaintiff

alleges that U.S. Bank breached section 9(d) of the Mortgage, which provides:

> In many circumstances regulations issued by the Secretary will
> limit Lender's rights, in the case of payment defaults, to require
> immediate payment in full, and foreclose if not paid.  This Security
> Instrument does not authorize acceleration or foreclosure if not
> permitted by regulations of the Secretary.

(*Id.* ¶¶ 90, 105; Ex. B, Mortgage § 9(d).)

Plaintiff further alleges that 24 C.F.R. § 203.604(b) is the applicable "regulation[]"

of the Secretary" that precluded U.S. Bank from foreclosing.  (Compl. ¶¶ 90, 105.)  That

regulation provides:

> The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced . . . .

24 C.F.R. § 203.604(b). Plaintiff alleges U.S. Bank "failed to have face to face meetings with Plaintiff," and "failed to make reasonable efforts to arrange such meetings." (Compl. ¶ 106.)

Plaintiff's contract claim based on 24 C.F.R. § 203.604(b) fails for multiple reasons. First, Plaintiff cannot sue U.S. Bank for breach of the Mortgage because her allegations establish that she breached it first. Second, Plaintiff has failed plausibly to allege that U.S. Bank's alleged breach caused her damages. Third, in the course of attacking U.S. Bank's right to foreclose, Plaintiff fatally undermines her claim that U.S. Bank owed her contractual duties.

### A. Plaintiff May Not Sue For Breach of Contract Because She Herself Is In Material Breach.

Plaintiff fails to state a claim for which relief may be granted because she has alleged her own prior material breach of the Mortgage. "To prevail on [a] breach of contract claim, Plaintiff must first show that [s]he substantially performed [her] obligations under the contract." *Labelle v. Malry, L.P.*, 2007 R.I. Super. LEXIS 109, at *13 (R.I. Super. Ct. Aug. 8, 2007). Plaintiff can make no such showing. Her own allegations establish her failure to make payments as required under the Mortgage, which failure constitutes a material breach. (Compl. ¶ 91 (alleging she has suffered damages through deprivation of the opportunity "to work out [her] *mortgage delinquency*") (emphasis added)).) Courts have dismissed claims brought by delinquent mortgagors under 24 C.F.R. § 203.604(b) for this very reason. *See Strickler v. Chase Manhattan Mortg. Co.*, 2014 U.S. Dist. LEXIS 15112, at *15 (W.D. Tex. Oct. 22, 2014) (dismissing contract claim for failure to conduct meeting because "a party to a contract who is

13

himself in default cannot maintain a suit for its breach").  This Court should do the same here.

Because Plaintiff may not sue to enforce a contract that she herself has already materially

breached, her breach of contract claim must be dismissed.

**B.     Plaintiff Has Failed Plausibly To Allege Damages Resulting From The Alleged Breach.**

Plaintiff's contract claim also fails for lack of a plausible allegation that she

suffered harm caused by U.S. Bank's alleged failure to conduct a face-to-face meeting.  A claim

for breach of contract requires allegations of "damage to the plaintiff resulting from that breach

of contract."  *Petarca v. Fid & Cas. Ins. Co.* 884 A.2d 406, 410 (R.I. 2005).  Here, while

Plaintiff alleges that she missed out on "opportunities to work-out his [*sic*] mortgage

delinquency," she does not allege that she would have qualified for a loan modification or

otherwise averted foreclosure had U.S. Bank met with her in person.  (Compl. ¶ 91.)

Accordingly, Plaintiff fails to allege that U.S. Bank's supposed failure to meet with her caused

her any injury.

Courts routinely dismiss "face-to-face meeting" cases for this reason.  For

example, the court in *Lynn v. Citi Mortgage., Inc.*, 2016 U.S. Dist. LEXIS 26556 (N.D. Ga. Mar.

1, 2016), dismissed an identical claim for breach of contract based on the mortgagee's alleged

failure to conduct a face-to-face meeting.  The court reasoned that the "Plaintiffs [had] not

allege[d] any facts to show that a face-to-face meeting . . . would have prevented foreclosure."

*Id.* at **13-14; *see Rourk v. Bank of Am., Nat'l Ass'n.*, 587 F. App'x 597, 600 (11th Cir. 2014)

(holding that the mortgagor's failure to pay her loan "is fatal to her claim for breach of contract

and wrongful foreclosure, as her 'alleged injury was solely attributable to her own acts or

omissions'"); *Wallace v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 10079, at **14-**15

(N.D. Ga. Jan. 27, 2016) (dismissing contract claim for failure to conduct face-to-face meeting

because plaintiffs "do not allege any facts to show that a face-to-face meeting would have enabled them to cure the default or would have prevented foreclosure"); *Milon v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 181666, at \*15 (N.D. Ga. June 8, 2015) (same). Because Plaintiff does not allege that a face-to-face meeting would have averted foreclosure,[6] she fails to allege the essential elements of causation and damages. Her claim for breach of contract must therefore be dismissed.

### C. Plaintiff's Contract Claim Fails For Failure To Allege Privity.

The Court should also dismiss Plaintiff's contract claims because, by attacking U.S. Bank's title to the Note and Mortgage, Plaintiff has effectively alleged that U.S. Bank did not owe her any contractual duties. It is axiomatic that one cannot be sued for breach of contract unless there is a plausible allegation that the plaintiff was party to, or a third-party beneficiary of, a contractual promise made by the defendant. *Kelly v. Tillotson-Pearson, Inc.*, 840 F. Supp. 935, 944 (D.R.I. 1994) ("an action for breach of contract will not lie against nonparties to the contract") (internal citation omitted). At the same time, when a plaintiff affirmatively pleads facts that show she is not entitled to relief, the plaintiff has failed plausibly to state a claim. *See Buchwald v. Di Lido Beach Resort, Ltd. (In re McCann, Inc.)*, 318 B.R. 276, 290 (Bankr. S.D.N.Y. 2004) (holding that plaintiff failed to state a claim where facts defeating claim were incorporated by reference into the count); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) (Rule 8(e)(2) does not grant plaintiffs "license to plead inconsistent

---

6  Plaintiff seeks damages for "emotional and mental distress" purportedly caused by "Defendant's actions." In Rhode Island, a breach of contract claim does not support recovery of such damages. *Buenzle v. Newport Amusement Ass'n*, 29 R.I. 23, 68 A. 721 (R.I. 1908); *Frisina v. Women & Infants Hosp. of R.I.*, 2002 R.I. Super. LEXIS 73, at \*34 (R.I. Super. Ct. May 30, 2002); *see Veal v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 142478, at \*15 (E.D. La. Oct. 13, 2016) (dismissing breach of contract claim under 24 C.F.R. § 203.604(b) because mortgagor sought only "damages for non-pecuniary loss, that is, loss of something other than money such as emotional distress"). Moreover, Plaintiff makes no allegation that U.S. Bank's failure to conduct a "face-to-face meeting" caused such "emotional and mental distress." Instead, Plaintiff alleges that the foreclosure of her Property caused her distress, and that foreclosure, in turn, was caused by Plaintiff's failure to repay her loan.

assertions of facts within the allegations that serve as the factual predicates for an independent, unitary claim"); *Mayale-Eke v. Merrill Lynch*, 754 F. Supp. 2d 372, 382 n.9 (D.R.I. 2010) (noting that a "party could plead himself out of court by pleading facts that establish an impenetrable defense to his claims").

Here, Plaintiff alleges that "Defendant was *not* the note-holder or 'Lender' with respect to Plaintiff's mortgage[]." (Compl. ¶¶ 32, 67 (emphasis added).) Plaintiff expressly incorporates this allegation by reference in her claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 87, 98.) Thus, because Plaintiff expressly alleges that U.S. Bank is not the counter-party to her Note or Mortgage, U.S. Bank cannot have committed a breach, and Plaintiff's claim for breach of contract must accordingly be dismissed.

## IV.     THE GOOD-FAITH CLAIMS FAIL BECAUSE PLAINTIFF HAS NOT STATED A CLAIM FOR BREACH OF CONTRACT.

In Counts II and III, Plaintiff also asserts that U.S. Bank breached the "duty of good faith and reasonable diligence" and the " implied covenant of good faith and fair dealing" by failing to conduct a face-to-face meeting under 24 C.F.R. § 203.604(b). (Compl. ¶¶ 89, 107.) The Court should dismiss these claims because they are purely duplicative of her failed claim for breach of contract.

### A.     Plaintiff Has Not Stated A Claim for Breach of The Implied Covenant of Good faith And Fair Dealing (Count III).

In Rhode Island, it is the parties' contractual objectives that "form the permissible bounds of the good faith requirement for a given contract." *Hord Corp. v. PolymerResearch Corp. of Am.*, 275 F. Supp. 2d 229, 238 (D.R.I. 2003) (citing *Thompson Trading Ltd. v. Allied Breweries Overseas Trading Ltd.*, 748 F. Supp. 936, 942-43 (D.R.I. 1990)). Therefore, "a party's actions must be viewed against the backdrop of contractual objectives in order to

determine whether those actions were done in good faith." *Id.* If the contract expressly addresses the defendant's actions, *i.e.*, such actions are "free from arbitrary or unreasonable conduct," then the claim necessarily fails. *Thompson Trading*, 748 F. Supp. at 942.

Because actions alleged to be expressly required under a contract are free from discretion, *i.e.*, "arbitrary or unreasonable conduct," there "is no separate, independent [claim] for breach of good faith and fair dealing" when the plaintiff alleges that the same conduct constitutes a breach of the express terms of the contract. *Rhode Island Econ. Dev. Corp. v. Wells Fargo Sec., LLC, et al.*, 2013 R.I. Super. LEXIS 165, at *140 (R.I. Sup. Ct. Aug. 28, 2013) (citing *A.A.A. Pool Serv. & Supply, Inc. v. Aetna Cas. & Sur. Co.*, 121 R.I. 96, 98-99 (1978)). Indeed, the implied covenant of good faith and fair dealing cannot create "rights and duties not otherwise provided for in the existing contractual relationship." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 238 (1st Cir. 2013). Thus, dismissal is appropriate where a claim for breach of the implied covenant of good faith and fair dealing is purely duplicative of the plaintiff's claim for breach of contract. *See, e.g., Allstate Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC*, 907 F. Supp. 2d 216, 245-46 (D.R.I. 2012) (dismissing claim for breach of the implied covenant of good faith and fair dealing as "redundant and duplicative of [counterclaimant's] breach of contract claim").

Here, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is purely duplicative of her claim that U.S. Bank breached the express terms of the Mortgage contract. Plaintiff affirmatively alleges U.S. Bank breached the implied covenant of good faith and fair dealing "[b]y breaching the terms of the mortgage contracts . . . as stated in paragraph 9(d) . . . " (Compl. ¶ 90.) Accordingly, the Court should dismiss the duplicative claim for breach of the implied covenant of good faith and fair dealing.

**B.    Plaintiff Has Not Stated A Claim for Breach of The "Duty of Good Faith And Reasonable Diligence."**

The Court should dismiss Count II for the same reasons warranting dismissal of Count III. Plaintiff has purported to state two separate claims for breach of the implied covenant of good faith and fair dealing, casting one as an alleged breach of the duty of "good faith and reasonable diligence," and the other as a breach of the "covenant of good faith and fair dealing." (*Compare* Count II, *with* Count III.) U.S. Bank is unaware of any Rhode Island decision that recognizes an independent claim for breach of the duty of "good faith and reasonable diligence." Instead, "it seems that Plaintiff[] [is] attempting to use a variation of the implied covenant of good faith and fair dealing as simply another avenue through which to challenge the [foreclosure] as defective" based on U.S. Bank's alleged failure to conduct a face-to-face meeting. *Reyes v. Mortg. Elec. Registration Sys., Inc.*, 2012 R.I. Super. LEXIS 199, at *10 n.2 (R.I. Super. Ct. Jan. 18, 2012) (dismissing purported claim for breach of the "duty of good faith and reasonable diligence" because it was purely duplicative of claim for breach of the implied duty of good faith and fair dealing). Indeed, Plaintiff herself appears to acknowledge that Count II is not a separate claim, but instead is based on U.S. Bank's "duty of good faith and fair dealing." (Compl. ¶ 89.) Because Plaintiff has "failed to set forth a cognizable claim under this theory," dismissal is appropriate. *Reyes*, 2012 R.I. Super. LEXIS 199, at *10 n.2.

**V.    PLAINTIFF FAILS TO STATE A CLAIM UNDER RHODE ISLAND'S DECEPTIVE TRADE PRACTICES ACT.**

In Count IV, Plaintiff alleges U.S. Bank violated "Rhode Island's consumer protection and unfair and deceptive acts and practices laws" (the "DTPA"), codified at R.I. Gen. Laws § 6-13-1. Plaintiff alleges generally that U.S. Bank intentionally defrauded Plaintiff and induced her to "enter into contract or obligations," by making "false, deceptive and misleading representations and omissions about material aspects of the goods and services" allegedly offered

to Plaintiff in violation of R.I. Gen. Laws § 6-13.1-2.  (Compl. ¶¶ 116-20.)  This claim fails for multiple reasons.

### A.      Plaintiff Fails To Allege Her DTPA Claim With The Requisite Particularity.

First, Plaintiff fails to plead her DTPA claim with required particularity.  Under Fed. R. Civ. P. 9(b), claims sounding in fraud must be alleged with particularity, meaning the plaintiff must allege specific facts "about the time, place and content of the alleged false representations."  *Woods*, 733 F.3d at 358 (quoting *Juarez*, 708 F.3d at 279-80).  Plaintiff does not identify any specific "deceptive and misleading representations or omissions" and does not allege who made the alleged representations or omissions, when they were made, why they were false, or why they were made with an intent to deceive and induce reliance.  (*See* Compl. ¶¶ 110-123.)

Because Plaintiff has not alleged any particularized facts in support of her claim, let alone facts supportive of a claim that U.S. Bank made false representations or omissions with fraudulent intent, her claim fails to meet the pleading requirements of Rule 9(b) and must be dismissed.[7]

### B.      Plaintiff's DTPA Claim Against U.S. Bank Is Exempt Under R.I. Gen. Laws § 6-13.1-4.

Second, even if Plaintiff had pleaded her claim with the required degree of particularity, the DTPA claim must still be dismissed because U.S. Bank is regulated by the Office of the Comptroller of the Currency ("OCC") and HUD.  Under Rhode Island General Law § 6-13.1-4 (titled "Exemptions"), the Supreme Court of Rhode Island has "held that [the DTPA]

---

[7]   Plaintiff's DTPA claim also fails the pleading requirements of Rule 8.  Plaintiff has alleged only the "elements of a cause of action" "devoid of factual enhancement."  *Iqbal*, 556 U.S. at 678.  Moreover, materials embraced by the Complaint show her threadbare recitals to be false.  For example, Plaintiff alleges U.S. Bank wrongly induced her to "enter into contract or obligations."  (Compl. ¶ 117.)  U.S. Bank, however, did not originate Plaintiff's loan, and therefore could not have induced her to "enter into [any] contract or obligation" identified in the Complaint.  (Ex. A, Note & Ex. B, Mortgage (showing Domestic Bank originated the loan).)

expressly sets forth an exemption for all activities and businesses that are subject to monitoring

by state and federal regulatory bodies or officers." *Kelley v. Cowesett Hills Assocs.*, 768 A.2d

425, 432 (R.I. 2001). As a national bank, U.S. Bank is extensively regulated by, among others,

the OCC. U.S. Bank's specific actions in servicing FHA loans are also subject to HUD's

regulatory oversight and jurisdiction, as made clear on the face of the Complaint, which alleges

that U.S. Bank's actions as mortgagee are subject to "regulations of the Secretary of the

Department of Housing and Urban Development." (Compl. ¶ 90.)

Rhode Island courts have dismissed DTPA claims against banks for this reason.

In *Chavers v. Fleet Bank (RI), N.A.*, 844 A.2d 666, 672 (R.I. 2004), the Rhode Island Supreme

Court affirmed dismissal of a bank for alleged deceptive credit card practices because "[t]he

OCC oversees and monitors national banks for compliance with the provisions of the TILA and

Regulation Z of the Federal Reserve Board." The alleged misconduct here is no different. HUD

has significant regulatory authority over U.S. Bank to ensure compliance with its regulations,

including 24 C.F.R. § 203.604(b). *See, e.g.*, 24 C.F.R. § 25.6 (vesting HUD with power to

commence administrative actions against mortgagees for "failure to service an insured mortgage

in accordance with the regulations and any other requirements of the Secretary which are in

effect at the time the act or omission occurs"). Plaintiff's DTPA claims must therefore be

dismissed.

**C.**   **Plaintiff's DTPA Claim Fails Because "Mortgage Loans" Are Not Goods or Services Under R.I. Gen. Laws § 6-13.1-5.2.**

The Court should also dismiss Plaintiff's DTPA claim because it does not fall

within the protections of the DTPA under R.I. Gen. Laws § 6-13.1-2, which confers standing to

"bring an action" under the DTPA upon "[a]ny person who <u>purchased or leased goods or</u>

<u>services</u> primarily for personal, family, or household purposes and . . . suffers any ascertainable

loss of money or property, real or personal as the result of the use or employment by another person of a method, act, or practice declared unlawful by § 6-13.1-2." R.I. Gen. Laws § 6-13.1-5.2 (emphasis added). Plaintiff's mortgage loan transaction does not constitute a "purchase or lease of goods or services," and therefore Plaintiff's claim fails as a matter of law.

The Act does not define "goods" or "services," but Rhode Island courts have considered the terms[8] and determined mortgage loans do not qualify as either. *Miller v. Wells Fargo Bank, Nat'l Ass'n*, 2015 WL 1515942, at *6-8 (R.I. Super. Ct. Mar. 30, 2015) (holding that a mortgage loan is "not a purchase or lease of goods and services"); *DeSimone v. Warwick Savings and Loan Ass'n*, 1981 WL 386509, at *1 (R.I. Super. Ct. Oct. 20, 1981) (dismissing DTPA claim against bank because "[a] mortgage loan is not a purchase or lease of goods or services and hence the subject matter of the statute is inapplicable"). Like in *Miller* and *DeSimone*, Plaintiff here also alleges wrongdoing by her mortgage lender in connection with the terms of her mortgage loan. (Compl. ¶¶ 1-3.) Such a claim does not arise from Plaintiff's purchase or lease of a "good" or "service" under the DTPA, and thus Plaintiff lacks standing to sue under R.I. Gen. Laws § 6-13.1-5.2. Dismissal is also warranted for this reason.

## CONCLUSION

For the reasons set forth above, U.S. Bank respectfully submits that this Court should grant its motion and dismiss the Complaint in its entirety with prejudice.

---

[8] Black's Law Dictionary defines "goods" as "[t]angible or movable personal property other than money," while a "service" is defined as "labor performed in the interest or under the direction of others." Black's Law Dictionary (10th ed. 2014).

Dated: June 22, 2017                    U.S. BANK NATIONAL ASSOCIATION

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

*/s/ David J. Pellegrino*
David J. Pellegrino (#7326)
40 Westminster Street, Suite 1100
Providence, RI  02903
(401) 861-8200
(401) 861-8210 FAX
djp@psh.com


-and-

DORSEY & WHITNEY LLP

Skip Durocher (*pro hac vice*)
Eric R. Sherman (*pro hac vice*)
Michael Stinson (*pro hac vice*)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
(612) 340-2600
(612) 340-2868 FAX

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 22, 2017.

*/s/ David J. Pellegrino*

3082823.1/9410-56